UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALEXANDRA WIENERT,

      Plaintiff,

  -vs-                                   Case No.  08-14482
                                         Hon. Denise Page Hood

GMAC MORTGAGE CORPORATION, and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

      Defendants.

### Response to Defendants' Motion to Dismiss and for Summary Judgment

      The Plaintiff, through her attorney of record, in response to Defendants' Motion to Dismiss

and for Summary Judgment, denies that this Defendant is entitled to such relief for reasons set forth

in the Brief in Opposition accompanying this Response.

                    Respectfully Submitted,

                    ADAM G. TAUB & ASSOCIATES
                    CONSUMER LAW GROUP, PLC

                    By:     s/ Adam G. Taub
                              Adam G. Taub (P48703)
                              Attorney for Plaintiff
                              18930 West 10 Mile Rd. Suite 2500
                              Southfield, MI 48075
                              (248) 746-3790
                              adamgtaub@clgplc.net

Dated:  July 6, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALEXANDRA WIENERT,

     Plaintiff,


 -vs-                           Case No.  08-14482
                                    Hon. Denise Page Hood


GMAC MORTGAGE CORPORATION, and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

     Defendants.

## Plaintiff's Brief in Opposition to
## Defendants' Motion to Dismiss and for Summary Judgment


                                  Respectfully Submitted,

                                  ADAM G. TAUB & ASSOCIATES
                                  CONSUMER LAW GROUP, PLC

                        By:     s/ Adam G. Taub
                                  Adam G. Taub (P48703)
                                  Attorney for Plaintiff
                                  18930 West 10 Mile Rd. Suite 2500
                                  Southfield, MI 48075
                                  (248) 746-3790
                                  adamgtaub@clgplc.net


Dated:  July 6, 2009

## <u>TABLE OF CONTENTS</u>

Authorities cited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page ii

Counter-Statement of Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page iii

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 1

II.     Counter-Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 2

III.    Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 9

        A.      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 9

        B.      The pleadings are sufficient to state a R.E.S.P.A. violation . . . . . . . . . . . page 10

        C.      The Defendant GMAC violated R.E.SP.A . . . . . . . . . . . . . . . . . . . . . . page 11

        D.      GMAC Mortgage breached the Contract . . . . . . . . . . . . . . . . . . . . . . . page 15

        E.      Plaintiff withdraws her claim under the MCPA . . . . . . . . . . . . . . . . . . . page 16

IV.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . page 16

**Authorities Cited**

*American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 355 (6th Cir. 1990)

*Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252 (1986)

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F3d 912, 925 (9th Cir. 2001)

*Berthold Types Ltd. v. Adobe Systems Inc.* 242 F3d 772, 775 (7th Cir 2001)

*Briggs v. Ohio Elections Comm'n*, 61 F3d 437, 493 (6th Cir 1995)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)

*Gilligan v. Jamco Develop. Corp.*, 108 F3rd 246, 249 (9th Cir. 1997)

*Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996)

*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)

*Hutchinson v Del. Sav. Bank FSB*, 410 F Supp 2d 374

*Johnstone v Bank of Am., N.A.* 173 F Supp 2d 809  (2001, ND Ill).

*Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*Powe v. Chicago*, 664 F2d 639, 642 (7th Cir 1981)

*Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002)

12 U.S.C. §§ 2601 *et seq.*

12 U.S.C. § 2607(b)

F.R.Civ.P. 12(b)

F.R.Civ.P. 12(e)

F.R.Civ.P. 56(c)

F.R.Civ.P. 56(f)

## <u>Counter-Statement of Issues Presented</u>

1.     Should this Court deny the Defendants request for relief under Rule 12?

     Plaintiff says, "Yes."

     Defendant says, "No."


2.     Should this Court deny the Defendants request for relief under Rule 56?

     Plaintiff says, "Yes."

     Defendant says, "No."

## I.      <u>Introduction</u>

The facts in this case demonstrate how the Defendants, mortgage loan servicers, failed to apply almost $10,000.00 in mortgage payments, caused late fees and other excessive and illegal charges to accrue, diverted money from principal, interest, taxes and insurance, created pure profit for themselves at the expense of the Plaintiff and sent her home into foreclosure. All of the facts are supported by ample documentation that tell a story of a lender's policy of setting up a homeowner for failure while pocketing her payments.

**The fundamental problem in this case is that between August of 2004 and June of 2008, Plaintiff has paid the Defendants a total of $72,692.76.** *(Exhibit A – Affidavit of Plaintiff. Exhibit B – Spreadsheet and Proof of Mortgage Payments)* **The Defendants can only account for $62,818.37.** *(See Defs' Exhibit B – transactional loan history).* **The Plaintiff wishes to keep her home and stands ready to pay what she rightfully owes. However, the Defendants refuse to account for the missing money.**

Plaintiff has never been unwilling to pay any escrow shortfall. However, according to the simple math, Plaintiff should have a positive escrow balance! *(Exhibit A – Affidavit of Plaintiff)* Plaintiff simply wants credit for the money she has paid and to have the illegal late fees, caused by the Defendants, reversed.

In addition to the Defendants' failure to adequately follow the most basic of contract principles – properly crediting a debtor for payments she made – the Defendants violated federal law by refusing, once confronted with a request to account for its errors, to correct them and continuing to report them during the statutorily mandated investigation period.

## II.    <u>Counter- Statement of Facts</u>

On August 31, 2004, Alex Wienert and the GMAC Mortgage entered into a Mortgage which is now serviced by the Defendants. *(Defs' Brief, generally)* She continued to make timely payments on the mortgage until June of 2005, when she fell 30 days behind on a payment. *(Defs' Exhibit B – transactional loan history)* On August 25, 2005, Plaintiff quickly cured any default including any late fees, by sending a check for $4,715.98.     *(Exhibit A – Affidavit of Plaintiff.     Exhibit B – Spreadsheet and Proof of Mortgage Payments.) (See also Defs' Exhibit B – transactional loan history.)*

Immediately after rectifying her arrearage in August of 2005, Plaintiff began on a path to get caught up with make her payments timely. For her September 2005 and October 2005 payments – she made them together -- Plaintiff sent GMAC Mortgage Corporation $2,971.52. However, for reasons unknown, GMAC Mortgage Corporation <u>refused to credit these payments and returned the check to the Plaintiff</u>, but not before charging Plaintiff with excessive penalties caused by it's refusal to accept her check, *( Exhibit A – Affidavit of Plaintiff.     Exhibit B – Spreadsheet and Proof of Mortgage Payments)* and not before putting the Plaintiff's home into foreclosure. *(Defs' Brief, generally)*. Plaintiff contacted GMAC Mortgage and GMAC Mortgage told Plaintiff that it was refusing to accept her payments. *(Exhibit A – Affidavit of Plaintiff)*

In order to cure her default and get her home out of foreclosure, according to GMAC Mortgage, Plaintiff was required to pay $7,863.44. *(Exhibit C – Foreclosure Repayment Agreement dated 12-16-05)*

On December 16, 2005, Plaintiff sent GMAC Mortgage Corporation $6,197.00 *( Exhibit A – Affidavit of Plaintiff.     Exhibit B – Spreadsheet and Proof of Mortgage Payments)* which was

more than enough money to cover the four payments that GMAC Mortgage refused to accept as well as any late fees imposed legally by GMAC Mortgage Corporation up until that point.  However, as a result of GMAC Mortgage's own refusal to take her September and October payments, GMAC Mortgage imposed an additional $1,666.44 fee on Plaintiff and required that she enter into a 23 month repayment plan, making up the additional amount by paying her normal payment – $1,476.06 – along with an additional $82.15 per month.  (*Exhibit C – Foreclosure Repayment Agreement dated 12-16-05*).

When Plaintiff sent in her first payment under the first reinstatement plan, GMAC Mortgage Corporation rejected it (*Exhibit D – 1/30/06 Correspondence from GMACM*).   As a result, GMAC Mortgage Corporation demanding that Plaintiff enter into another Reinstatement plan ( *Exhibit E – Foreclosure Repayment Agreement dated 2-10-06*) and used this as a pretext to charge the Plaintiff an additional $1,104.00 over the next 23 months. Under the terms of the second foreclosure repayment plan of February 10, 2006, Plaintiff would make an even higher monthly payment for 23 months from March of 2006 until January of 2008; at the end of this period, presuming she made her payments on time, Plaintiff would resume her regular monthly payments. (     *Exhibit E – Foreclosure Repayment Agreement dated 2-10-06*).

During the 23 month reinstatement period, Plaintiff made her monthly payments timely according to the  foreclosure repayment plan of February 10, 2006 (*Exhibit A – Affidavit of Plaintiff. Exhibit B – Spreadsheet and Proof of Mortgage Payments)* No one from GMAC Mortgage, during this period of time ever told ever told her she needed to pay a different or higher amount.  She received no invoices  from GMAC.  Plaintiff absolutely denies receiving any notice of an escrow shortfall in June of 2006 or at any time.  *(Exhibit A – Affidavit of Plaintiff.)*

Page 3

The only documentation that Ms. Wienert received during the reinstatement period were general default notices. She never received notices of any escrow shortfall. In fact, according to the Defendants own exhibits, **Ms. Wienert called GMAC Mortgage on June 1, 2006 and inquired as to the default notices she was receiving.** GMAC Mortgage told Ms. Wienert to **disregard these notices**. *(See Exhibit CC – GMAC Mortgage's History for Account)*

It is important to note that the documents produced as Defendant's Exhibits G through I ***ARE NOT AUTHENTIC***. Not only does Ms. Wienert deny that she received any of these documents until January 25, 2008, it is clear that they were not even sent! These documents are "representations of printed documents." They are not authentic.

In January of 2008, Plaintiff contacted GMAC Mortgage Corporation by phone to inquire as to the exact amount of her regular monthly payment. *(Exhibit A – Affidavit of Plaintiff).* No one at GMAC Mortgage Corporation could provide an answer for Plaintiff as to any information about her mortgage. *( Exhibit A – Affidavit of Plaintiff).* Plaintiff continued to pay the amount set forth in the foreclosure repayment agreement, even though this amount was about $133.00 higher than her original regular monthly payment of $1,476.06. *(Exhibit A – Affidavit of Plaintiff. Exhibit B – Spreadsheet and Proof of Mortgage Payments).*

At the end of January, when her reinstatement plan was over, Plaintiff began receiving notices from GMAC Mortgage that she was past due all the way back to August of 2007 and owed more than $10,770.00. *(Exhibit F – Correspondence from GMACM dated 1-25-08)* In February, March and May she received similar notices (Exhibit G – Correspondence from GMACM dated 2-25-08; *Exhibit H – Correspondence from GMACM dated 3-25-08*; and *Exhibit I – Correspondence from GMACM dated 5-27-08*)

Page 4

In spite of numerous calls to GMAC Mortgage, neither Plaintiff nor anyone from GMAC was able to figure out why she owed all this money. ( *Exhibit A – Affidavit of Plaintiff.* ) Plaintiff was in constant contact with Defendant. ( *Exhibit A – Affidavit of Plaintiff.* ) For five months after the reinstatement plan ended, from January to May of 2008, Plaintiff continued to timely pay more than her original monthly payment and GMAC Mortgage continued to rack up more and more profit in late charges. *( Exhibit A – Affidavit of Plaintiff.   Exhibit B – Spreadsheet and Proof of Mortgage Payments).*

In June of 2008, Plaintiff tried again to get a straight answer from GMAC Mortgage Corporation regarding her regular monthly payment; at that time, a representative of GMAC Mortgage Corporation told her that she needed to pay $1,795.10 by the end of June or her home would go into foreclosure. *(Exhibit A – Affidavit of Plaintiff.* ) On June 25, 2008, Plaintiff paid GMAC Mortgage Corporation $1,795.10. *(Exhibit A – Affidavit of Plaintiff.   Exhibit B – Spreadsheet and Proof of Mortgage Payments).*

In July of 2008, GMAC Mortgage Corporation rejected Plaintiff's payment with no explanation and sent her home into foreclosure once again. *(Exhibit J – Correspondence from Orlans dated July 15, 2008)*   **It turns out that none of the January through May payments had been credited to principal, interest, taxes or insurance!  These five payments seemingly evaporated!**

Since June of 2008, GMAC Mortgage Corporation has refused to accept any funds from the Plaintiff;  Plaintiff has set aside all of her mortgage payments, but the Defendant continues to demand an extra $18,000.00 for late fees – which GMAC Mortgage caused – and payments – which GMAC Mortgage lost or stole.

Page 5

Plaintiff, her parents and her former counsel, repeatedly contacted GMAC Mortgage Corporation and its attorneys, in writing, and tried to explain that GMAC Mortgage Corporation had made a mistake and was charging amounts not authorized by the terms of the loan or the reinstatement plan.  *(Exhibit K – Correspondence with GMACM 7-18-08); Exhibit L– Correspondence with GMACM with notarized authorization dated 7-21-08; Exhibit M– Correspondence between Fink and Orlans dated 7-22-08; Exhibit N– Correspondence between Fink and GMACM dated 7-22-08; Exhibit 0 – Second Correspondence between Fink and Orlans dated 7-22-08).*

GMAC Mortgage acknowledged receipt of Plaintiff's correspondence and responded with gibberish and nonsense.  On July 22, 2008 in response to Plaintiff's request which included a notarized authorization that GMAC Mortgage speak with her father, GMAC asked that Plaintiff produce a notarized authorization. *(Exhibit P – Letter from GMACM  dated 7-22-08).*  In response to Plaintiff's letter which set out, in excruciating detail, her payment history, documented with cancelled checks and wire transfer receipts, and asked for an explanation as to why she was in arrears, GMAC Mortgage asked her to  produce "the check that was used to make the payment." *(Exhibit Q – Letter from GMACM  dated 7-23-08).*

Plaintiff, her parents and her former counsel, continued to repeatedly contact GMAC Mortgage Corporation and its attorneys, practically begging for an explanation of why the Plaintiff continued to get assessed for excessive fees and why she had an arrearage in excess of $10,000.00.

On July 30, 2009, former counsel for the Plaintiff sent a letter to Defendants' attorney asking how it could be that Plaintiff was in arrears $12,000.00 when she had complied with the reinstatement plan. *(Exhibit R – Letter from Fink to Caleb Shureb  dated 7-30-08).*  The next day,

the attorney for the Defendant acknowledge that he had asked GMAC Mortgage to explain the reasons for the alleged arrearage. *(Exhibit S – Email from Caleb Shureb to Fink dated 7-31-08 )*. On the same date, Plaintiff re-transmitted by fax all of her proofs of payment to GMAC and included another authorization for GMAC to speak with her former lawyer. *(Exhibit T – Fax from Plaintiff to GMAC dated 7-31-08).*

   In the meantime, Plaintiff was spending hours on hold on a daily basis, trying to get answers form GMAC Mortgage; throughout the entire nightmare/horror show orchestrated by GMAC Mortgage, Ms. Wienert continuous ly contacted GMAC Mortgage to get straight answers. *(Exhibit A – Affidavit of Plaintiff.  See Exhibit CC – GMAC Mortgage's History for Account).*

   The next, day, Plaintiff's former lawyer contacted Defendant's lawyer and asked where the Plaintiff should send her payments. *(Exhibit U – Email chain between Caleb Shureb to Fink dated 8-1-08).*

   On August 6, 2008, GMAC Mortgage sent Plaintiff a letter refusing to discuss the loan with Plaintiff's former counsel because the authorization was not notarized in the fashion that GMAC Mortgage demanded. *(Exhibit V – Letter from GMACM to Plaintiff dated 8-6-08).*

   Two days later, GMAC Mortgage responded to the Plaintiff's numerous requests by sending a nonsensical form letter. *(Exhibit W – Letter from GMACM to Plaintiff dated 8-8-08).*

   On August 12, 2008, GMAC Mortgage's attorney revealed that GMAC Mortgage has not authorized him to "get involved."  Plaintiff's former counsel complained to Mr. Shureb that Plaintiff is being put on hold for over an hour or more, only to be put in contact with a representative who could do nothing more than tell her she owed the entire amount of the loan. *(Exhibit X – Email chain between Fink and Shureb).*

Page 7

The next day, Plaintiff received a call from GMAC Mortgage telling her that her home was not in foreclosure and that there was no record of any dispute. *(Exhibit A – Affidavit of Plaintiff* and *Exhibit Y – Email from Fink to Shureb dated 8-13-09).* On August 18, 2009, the Plaintiff's former counsel sent GMAC Mortgage, for the third time in a less than six weeks, the detailed payment history. *(Exhibit Z – Letter from Fink to GMACM dated 8-18-09*).

On August 25, 2008, Plaintiff sent her qualified written request to GMAC Mortgage Corporation *(Exhibit AA – Qualified Written Request*) which included her name, loan number and the property address; the qualified written request indicated a statement of the reason for her belief that there was an error; and requested in sufficient detail that the Defendant provide specific information so that Plaintiff could determine the exact nature of the disputed items. *(Exhibit AA – Qualified Written Request* ).   Defendant received a copy of Plaintiff's qualified written request. *(Exhibit AA – Qualified Written Request*)

On September 8, 2008, GMAC Mortgage responded to Plaintiff's Qualified Written Request. *(Exhibit BB – Response to Qualified Written Request*) by sending correspondence to her current counsel's office.  Curiously, however, GMAC Mortgage required no notarized authorization from the Plaintiff. *(Exhibit BB – Response to Qualified Written Request*) .

**Plaintiff has paid the Defendants a total of $72,692.76.** *(Exhibit A – Affidavit of Plaintiff. Exhibit B – Spreadsheet and Proof of Mortgage Payments)* **The Defendants can only account for $62,818.37.** *(See Defs' Exhibit B – transactional loan history* ).   **The Defendants refuse to account for the missing money.**

Despite its receipt of Plaintiff's qualified written request letter and her previous requests for an explanation of the alleged arrearage, Defendant, GMAC Mortgage Corporation, has refused and

failed to lawfully and properly respond to Plaintiff's qualified written request by correcting its error and continues to attempt to collect money and items not owed by the Plaintiff.

GMAC Mortgage Corporation failed to discontinue credit reporting during the pendency of Plaintiff's qualified written request. GMAC continued to ignore the Plaintiff and continued to contact her directly, even after actual notice that she was represented by counsel. *(Exhibit A – Affidavit of Plaintiff.)* Because the Defendant continued to report the delinquencies to credit bureaus, Plaintiff was prevented from re-financing with another mortgage lender. *(Exhibit A – Affidavit of Plaintiff.)*

All that Plaintiff ever wanted was a rational explanation of why she was being charged these amounts and not getting credit for payments she made and why, after paying timely for 28 months and overpaying for five of them, she continued to owe more and why her money was not being properly applied. She has acted in good faith and continues to set aside her monthly payments so that once GMAC Mortgage explains why her payments are "evaporating", she can reinstate her mortgage and keep her home. As a result of the nightmare/horror show caused by the Defendant, GMAC Mortgage, the Plaintiff has suffered emotional damages *(Exhibit A – Affidavit of Plaintiff)* which a trier of fact will, most assuredly, award.

## III.    Law and Argument

### A.    Standard of Review

#### 1.    Rule 12(b)

The motion to dismiss for failure to state a claim is viewed with disfavor is rarely granted. *Gilligan v. Jamco Develop. Corp.*, 108 F3rd 246, 249 (9th Cir. 1997). Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving –

if the claim is unclear, by requiring a more definite statement under Rule 12(e), and if the claim is clear but implausible, by inviting a motion for summary judgment. *Bennett v. Schmidt*, 153 F3d 516, 518 (7th Cir 1998).

A complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Because a motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint, dismissal under Rule 12(b)(6) is proper only when, even taking all of plaintiff's alleged facts to be true, he can prove no set of facts that would entitle him to relief. See *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 355 (6th Cir. 1990).

Unless the Court converts a Rule 12(b)(6) motion to a Rule 56(c) motion, the court cannot consider facts outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials). *Arpin v. Santa Clara Valley Transp. Agency*, 261 F3d 912, 925 (9th Cir. 2001); *Powe v. Chicago*, 664 F2d 639, 642 (7th Cir 1981).

### 2.    Rule 56

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The Court reviews all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

In order to defeat a summary judgment motion, the nonmoving party must show sufficient evidence to create a genuine issue of material fact. *Prebilich-Holland v. Gaylord Entm't Co.*, 297

F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)).

The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby*,

Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Entry of summary judgment is

only appropriate  against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hartsel

v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

### B.  The pleadings are sufficient to state a R.E.S.P.A. violation

Defendants first argue that the complaint is defective as it does not state a claim under

R.E.S.P.A..  Clearly, this is not the case.  In *Hutchinson v Del. Sav. Bank FSB*, 410 F Supp 2d 374

(2006, DC NJ), the District Court held that the Plaintiffs had sufficiently stated a claim against loan

servicing company for violating 12 U.S.C. § 2605(e) by alleging that servicing company did not

respond to written requests and by also alleging that servicing company reported delinquent

payments to credit bureaus.  *Id.*  As such, relief under Rule 12 should not be available to the

Defendants.

### C.  The Defendant GMAC violated R.E.SP.A.

Defendants' next argument is founded on the misguided notion that no evidence, in a light

most favorable to the Plaintiff, is available to create a question of fact as to whether the Defendant

violated R.E.S.P.A.  This is clearly not the case and the Defendant is not entitled to relief under Rule

56(c).

### 1.  The transactions in ths lawsuit are covered under R.E.S.P.A.

R.E.S.P.A. applies to federally regulated mortgage loans, which include subordinate liens and

Page 11

loans used to payoff an existing loan secured by the same property.  12 U.S.C §§ 2601  *et seq*.

Plaintiff's pleadings set forth a claim that the Defendant violated § 2605(e) of the R.E.S.P.A. which

reads, in relevant part:

> (e) Duty of loan servicer to respond to borrower inquiries.
>
> (2) Action with respect to inquiry. Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall --
>> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
>
> (3) Protection of credit rating. During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 USCS § 1681a]).
>
> 12 USCS § 2605(e)

Clearly, the facts in this case establish that Plaintiff's transactions involved a federally regulated mortgage loan. Equally clear is the fact that GMAC Mortgage did not comply with this section of R.E.S.P.A..

### 2.   GMAC Mortgage Corporation willfully violated R.E.S.P.A.

#### a.   Failing to correct the account

GMAC Mortgage Corporation willfully violated R.E.S.P.A. by failing to make appropriate corrections in the Plaintiff's account and transmit written notification of such correction to the Plaintiff under 12 U.S.C. §2605(e)(2)(A).

In this case, the Defendant, after receiving four separate spreadsheets and proofs of payment demonstrating that it had received $72,692.76, did not correct Plaintiff's account. To this day, the Defendants can only account for $62,818.37. In any case, Summary Judgment is not appropriate under the applicable standard of review.

#### b.   Failing to provide the name and telephone number of an individual employed by Defendant who could provide assistance to the Plaintiff.

Under 12 U.S.C. §2605(e)(2)(B) , the Defendant was required, in response to the qualified written request, to provide the Plaintiff with, "the name and telephone number of an individual employed by Defendant who could provide assistance to the Plaintiff." The Defendant failed to do this, and therefore, it violated R.E.S.P.A..

#### c.   Failing to provide a written explanation

In response to the qualified written request, under 12 U.S.C. §2605(e)(2)(B), GMAC Mortgage was required to provide the Plaintiff with a written explanation or clarification which included a statement of the reasons that GMAC Mortgage Corporation believed the Plaintiff's

account to be correct.  In other words, faced with Plaintiff's repeated proof that almost $10,000.00 of her payments were missing, the Defendant failed to address the issue at all.

### d.      Failing to provide the information requested by the Plaintiff

GMAC Mortgage Corporation willfully violated R.E.S.P.A. by  failing to provide the Plaintiff with a written explanation or clarification that included the information she requested or an explanation of why the information requested was unavailable or could not be obtained by GMAC Mortgage Corporation and the name and telephone number of an individual  who could provide assistance to the Plaintiff.  This is a violation of 12 U.S.C.  §2605(e)(2)(B).

### e.      Failing to cease adverse credit reporting

GMAC Mortgage Corporation willfully violated R.E.S.P.A. by providing information regarding overdue payments to the national credit bureaus during the 60 day period which began on the date of GMAC Mortgage Corporation's receipt of the qualified written request.    This is a violation of 12 U.S.C. § 2605(e)(3).

### 3.      Plaintiff suffered damages and may recover them

Under 12 U.S.C. § 2605(f), Plaintiff may recover damages and costs for violations of R.E.S.P.A., which states, in relevant part,

> (f)Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1) Individuals. In the case of any action by an individual, an amount equal to the sum of--
>> (A) any actual damages to the borrower as a result of the failure; and
>> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 1,000.00.

*****

Page 14

(3) Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

12 U.S.C. § 2605(f)

In this matter, the Plaintiff may recover her actual out-of-pocket damages of $9,874.39 – the by the amount lost by Defendant – along with interest, late fees accessed by the error of the Defendant, as well as other actual damages to be determined by the jury, which would include actual damages for emotional distress.   A borrower can recover actual damages for emotional distress resulting from lender's violations of 12 USCS § 2605(e)(3).   *Johnstone v Bank of Am., N.A.* 173 F Supp 2d 809  (2001, ND Ill).  In this case, Plaintiff reasonably anticipates that a jury, when presented with the facts in this matter, will actual award damages for emotional distress simply based on the testimony of the Plaintiff.

**D.**     **GMAC Mortgage breached the contract**

Under the basic terms of the loan documents, the Plaintiff is required to make payments and the servicer of the loan is supposed to, upon receiving those payments, at very least, apply the payments to *something*.  Clearly, a payment made and received yet not credited, constitutes a breach of contract by the Defendant, and this claim should not be dismissed.  Plaintiff's breach of contract claim is relatively straight-forward.  Nothing in the loan documents allows the Defendant to engage in the behavior described herein.

**E.**     **Plaintiff withdraws her claim under the MCPA**

To the extent that Defendants' raise the Michigan Supreme Court-made exemption to the Michigan Consumer Protection Act as an affirmative defense, the Plaintiff withdraws this claim.

Page 15

**IV.**     <u>**Conclusion**</u>

The Defendant is not entitled to relief under Rule 12 or under Rule 56 as to the Plaintiff's

R.E.S.P.A. claims.   Nor is such relief available for her breach of contract claim. As such, the

Defendants' Motion to Dismiss and for Summary Judgment should be denied.


Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:      <u>s/ Adam G. Taub</u>
          Adam G. Taub (P48703)
          Attorney for Plaintiff
          18930 West 10 Mile Rd. Suite 2500
          Southfield, MI 48075
          (248) 746-3790
          adamgtaub@clgplc.net

Dated: July 6, 2009

## <u>Certificate of Service</u>

My name is Adam G. Taub and I am an officer of this Court.  On July 6, 2009, I served all parties entitled to notice with the foregoing document by ECF filing to each record address.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:     <u>s/ Adam G. Taub</u>
         Adam G. Taub (P48703)
         Attorney for Alexandra Wienert
         18930 West 10 Mile Rd. Suite 2500
         Southfield, MI 48075
         Phone:  (248) 746-3790
         Email:   adamgtaub@clgplc.net

Dated: July 6, 2009