UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDRA WIENERT,

                                                    Case No. 08-CV-14482
              Plaintiff,                            Honorable Denise Page Hood

v.


GMAC Mortgage Corporation, and
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS,

              Defendants.
_____/

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
AND
DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO COMPEL

I.      INTRODUCTION

        The instant order resolves the following motions currently pending before the Court: (1)

Plaintiff's Motion to Compel Answers to Interrogatories **[Docket No. 15, filed June 12, 2009]**;

(2) Defendants' Motion to Dismiss and for Summary Judgment **[Docket No. 16, filed June 12,**

**2009]**; and Defendants' Motion to Strike Plaintiff's Affidavit **[Docket No. 20, filed July 10,**

**2009]**.  Oral arguments were heard on July 29, 2009.  For the reasons set forth below,

Defendants' Motion to Dismiss and for Summary Judgment is GRANTED in PART, Defendants'

Motion to Strike Plaintiff's Affidavit is DENIED, and Plaintiff's Motion to Compel Answers to

Interrogatories is DENIED WITHOUT PREJUDICE.[1]

---

[1] At the July 29, 2009 hearing the parties agreed that many of the contested objections to the interrogatory responses could be resolved among themselves in light of the updated responses and supplemental documentation.

## II.      STATEMENT OF FACTS

The instant action arises from the attempted foreclosure of Plaintiff Alexandra Wienert's property, 1477 Ainsley Street, Ypsilanti, Michigan.  On August 31, 2004, Wienert purchased the property utilizing a loan from Defendant Pioneer Mortgage, Inc. ("Pioneer Mortgage") in the amount of $167,900.00.  In so doing, Wienert executed a fixed/adjustable rate note payable to Pioneer Mortgage, secured by a mortgage on the property also executed on August 31, 2004.  The subject mortgage is held by Defendant Mortgage Electronic Registration Systems ("MERS") as the nominee for Pioneer Mortgage, and its assigns, in particular Defendant GMAC Mortgage Corporation ("GMACM").

Wienert's payment history and the proper application of the mortgage payments is at the heart of the current dispute.  By June of 2005, Wienert fell behind on her payments, however, Wienert submits that by August 25, 2005, she cured any default by tendering a check for $4,715.98.  Later, Wienert combined the September and October 2005 payments together and tendered $2, 971.52 to GMACM on or about November 1, 2005.  In a letter dated November 29, 2005, Wienert indicated that she was having difficulty making her mortgage payments because she "fell into a rut when [her] roommate had moved out ... small unexpected items that came up periodically [] required [her] to shell out extra money [including] car repair, higher utilities, health complications..." [November 29, 2005 Hardship Letter, Defs.' Mot. for Summ. J., Ex. B].  Because of these hardships, Wienhert "wait[ed] an extra 15 days to mail in two installments on [November 1, 2005]." [*Id.*] As a result, GMACM declined to credit the payments and returned the check to Wienhert, but also charged her with late penalties and initiated foreclosure proceedings.

In an effort to avoid foreclosure, Wienert entered into a Foreclosure Repayment

Agreement, wherein she agreed to pay $6,197.00 of the $7,863.44 required to cure the default by December 19, 2005. [December 16, 2005 Foreclosure Repayment Agreement, Pl.'s Resp. to Defs. Mot. for Summ. J., Ex. C].  It is Wienert's position that the $1,666.44 difference was composed of fees from the initial foreclosure that should have never been assessed.  Although Wienert paid the initial $6,197.00, she was unable to pay the additional amount.  The December 16, 2005 Foreclosure Agreement was short-lived.  GMACM rejected Wienert's initial monthly payment on January 30, 2006, because she attempted to pay using a personal check instead of one of the required methods (i.e. money order, cashier's check).  Consequently, GMACM again placed Wienert in foreclosure and imposed more fees and penalties against her.

According to Wienert, the additional fees and subsequent foreclosure precipitated a second Foreclosure Repayment Agreement ("Feb. 10, 2006 Foreclosure Repayment Agreement"), which accounted for the additional $1,666.44 by increasing her monthly payments by $82.15.  In the Feb. 10, 2006 Foreclosure Repayment Agreement, Wienert acknowledges a default amount of $5,884.26, and agreed to pay the amount of the default pursuant to a payment schedule.  Accordingly, GMACM agreed to "suspend but not terminate foreclosure activity." [Feb. 10, 2006 Foreclosure Repayment Agreement, Defs.' Mot. for Summ. J., Ex. F].  The referenced payment plan schedule indicates a monthly payment amount of $1,606.19 beginning March 25, 2006, and ending January 25, 2008.  Pursuant to the terms of the Foreclosure Repayment Agreement, this amount may also include "amounts due for real estate taxes and insurance" which as a result may "have to be increased, at the sole option of the Lender." [*Id.*] Moreover, the Feb. 10, 2006 Foreclosure Repayment Agreement also provided that:

> [t]he non-defaulted regular monthly payments continue to be due in accordance with the terms of the Mortgage.  Customer understands and agrees that the escrow

> portion of the regular monthly payment may change from time to time due to
> increases or decreases in property taxes and hazard insurance disbursed by Lender
> pursuant to the terms of the Mortgage.

[*Id.*].  Apparently, the parties have different interpretations of the effect of the Foreclosure

Repayment Agreement.  Wienert construed the Foreclosure Repayment Agreement as requiring a

higher monthly payment for 23 months – March 25, 2006 to January 25, 2008 – and when

successfully completed she would be able to resume her regular monthly payment amount.

However, GMACM seems to indicate that the repayment schedule requires amounts to be made

*in addition* to the regular monthly payment, and further emphasizes that even this amount is

subject to increase based on property tax or hazard insurance.  Failing to pay a  $5,975.94 escrow

payment increase, GMACM contends, is what caused Weinert to be in arrears and ultimately

caused GMACM to recommend foreclosure.

Wienert submits that she was in complete compliance with the repayment schedule set

forth in the Feb. 10, 2006 Foreclosure Repayment Agreement.  During the 23 month

reinstatement period, Wienert avers that no one from GMACM "ever told her that she needed to

pay a different or higher amount," nor did she receive any invoices indicating as much. [Pl.'s

Resp. to Defs.' Mot. for Summ. J., p. 3].  Further, she denies receiving any notice of an escrow

shortfall at any time.[2]  Yet, Wienert admits periodically receiving general default notices, which

prompted her to call GMACM regarding the status of her mortgage.  On one occasion, a

---

[2] Attached to Defendants' Motion for Summary Judgment, marked as exhibit G, is an
Escrow Analysis that appears to have been sent to Plaintiff.  The Escrow Analysis is dated June
27, 2008, and indicates – based on estimates utilizing the previous years charges– the amount
Plaintiff will be required to deposit in the escrow account for city taxes, insurance, and fire costs.
While the exhibit indicates that it is a "representation of a printed document," Plaintiff expressly
denies ever receiving it.

GMACM representative told Wienert to disregard these notices.

Wienert states that in January of 2008 – the conclusion of the repayment schedule – she contacted GMACM to verify the correct amount of her monthly mortgage payment. None of the GMACM representatives with whom she spoke were able to provide any information regarding her mortgage payment amount. Therefore, Wienert continued to pay the $1,606.19 as required by the Feb. 10, 2006 Foreclosure Repayment Agreement. Also in January, Wienert began receiving notices from GMACM which claimed that her mortgage payments were past due, dating all the way back to August of 2007, and seeking payment for over $10,770.00. Assuming that these notices were incorrect she persistently contacted GMACM regarding her monthly mortgage obligation. Eventually, Wienert submits that a GMACM representative told her that she needed to pay $1,795.10 by the end of June or her home would go into foreclosure. Although Wienert complied, GMACM rejected the payment and committed the foreclosure to Orlans Associates, P.C. to commence foreclosure proceedings on its behalf.

After being contacted by Olrans Associates, Wienert, her parents, and former counsel, attempted to contact GMACM, both orally and in writing, to resolve what Wienert asserts is a mistake causing her to be charged by amounts that are not authorized by the terms of the loan or the repayment agreement. In support of this assertion, Wienert provides several letters and e-mail correspondences, which demonstrate multiple efforts to prevent foreclosure and remedy the arrears payments. Most of these communications seek an explanation for the late fees and why she had an arrearage in excess of $10,000.00. Initially, GMACM's responses failed to adequately address Wienert's concerns. On August 6, 2008 GMACM sent a letter refusing to release information to Wienert's former counsel because the authorization form was improperly

completed. [August 6, 2008 GMACM Letter, Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. V].

Similarly, on August 8, 2008, GMACM sent a letter indicating that a repayment plan was

cancelled. [August 8, 2008, GMACM Letter, Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. W].

Wienert's former counsel was equally unable to procure answers when dealing with the attorneys

for Orlans Associates, P.C., but was able to obtain a postponement of any foreclosure sale.

On August 25, 2008, Wienert sent a qualified written request to GMACM, wherein she

detailed: her name, loan number and the property address, the reasons why she believed there was

an error, and requested that GMACM provide her specific information as to determine the exact

nature of the disputed items. [Qualified Written Requests, Pl.'s Resp. to Defs.' Mot. for Summ.

J., Ex. AA].  Finally, in response to the qualified written requests, GMACM provided an

accounting of Wienert's mortgage payments, and the amount owing on the loan.  According

GMACM's records, Wienert owed $18,441.20, composed of 10 missing payments (from

December 2007 to September of 2008), and 14 late charges, property inspection fees, outstanding

foreclosure advances, and an appraisal fee.  Enclosed in the response was a copy of: her payment

history; the note, mortgage and rider; a list of pending property tax and homeowner's insurance

charges; and an escrow analysis for 2006-2008.

Wienert contends that none of her payments from January through May of 2008 were

credited to the principal, interests, taxes or insurances.  In sum, she claims to have paid a total of

$72,692.76, but that GMACM can only account for $62,818.37.  Wienert further claims that

GMACM has failed to properly respond to her qualified written request, and persists in

attempting to collect money she does not owe.  Finally, she claims that GMACM has failed to

discontinue credit reporting during the pendency of her qualified written requests, which has

prevented her from obtaining re-financing with another mortgage lender.

Plaintiff commenced the instant suit on October 21, 2008, alleging that Defendants' actions violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601-2617; the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*,[3] and constitute a breach of contract.  In addition to damages, Plaintiff seeks the following equitable, injunctive, and declaratory relief, "to decelerate the mortgage balance, remove her from foreclosure, and declare her not to have been in breach of the mortgage agreement[, and declare] that the fees and costs attributable to the foreclosure by GMAC Mortgage Corporation were unauthorized." [Compl. ¶¶50-21].  Further, "Plaintiff requests an immediate accounting of all sums due and owing...as well as a corresponding correction of all credit reporting relating to the mortgage." [*Id.* ¶52].  Conversely, Defendant GMACM brought a two-count Counterclaim alleging that Plaintiff failed or refused to pay principle and interest on the subject note and corresponding escrow account causing a default on her contractual obligations. Consequently, Defendant GMACM is seeking an amount exceeding $162,000.00 for the alleged breach of contract and a declaration that it "may proceed with or recommence its foreclosure by advertisement" [Compl. ¶15]. Alternatively, Defendant GMACM  requests the Court to enter an order that: (1) finds Counter-Defendant Wienert liable for all amounts due and owing under the note; (2) holds that upon her failure to timely pay said amount, permits GMACM to sell the subject property at a public sale in accordance with Mich. Comp. Laws § 600.3101 *et seq.*; and (3) determines the priority of any lien interests affecting the real property and properly distribute any net proceeds realized on the sale, or impose a judgment on Wienert for any deficiency.

---

[3]  In response to Defendants' Motion for Summary Judgment, Plaintiff withdrew any claims relying on the Michigan Consumer Protection Act.

### III.    STANDARD OF REVIEW

The Defendants' motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure which allows a defendant to move for dismissal of all or part of a complaint if it fails to state a claim upon which relief may be granted.  When analyzing the sufficiency of a complaint, the Court applies the principle that a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A plaintiff is not required to provide "heightened fact pleading of specifics," but must allege facts sufficient to "raise a right to relief above the speculative level."  *Id.* at 555.  Additionally, all of a plaintiff's factual allegations must be taken as true in considering a motion to dismiss.  *Ricco v. Potter*, 377 F.3d 599, 603 (6th Cir. 2004).

Defendants have also brought a motion for summary judgment under Rule 56.  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.

In reviewing a party's motion for summary judgment, all evidence must be viewed in a light most favorable to the nonmoving party, and summary judgment is appropriate whenever the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 332.  Ultimately, the standard for determining whether summary judgment is

appropriate is "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v.*

*Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

IV.     **LAW & ANALYSIS**

    A.     **Affidavit of Alexandra Wienert**

        As a preliminary matter, Defendants argue that the affidavit of Alexandra Wienert should

be stricken.  Relying on Rules 12(f)(2) and 56(e) of the Federal Rules of Civil Procedure,

Defendants submit that certain paragraphs of the affidavit are: (1) not based upon personal

knowledge but instead rest upon hearsay; and (2) consist of vague and conclusory opinion

evidence.  After reviewing the updated affidavit of Alexandra Wienert and Plaintiff's arguments,

Defendants' motion to strike the affidavit of Alexandra Wienert is DENIED.

        Defendants' reliance on Rule 12(f)(2) is misplaced.  Pursuant to Rule 12(f), the "court

may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."  Fed. R. Civ. P. 12(f)(2) (emphasis added).  An affidavit does not fall within

the ambit of what is considered a "pleading" under Rule 7, and therefore is not subject to a

motion to strike brought under Rule 12(f).  *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227

(6th Cir. 1966) ("The motion to strike the affidavits was filed pursuant to Rule 12(f), Federal

Rules of Civil Procedure.  This rule specifically relates to matters to be stricken from pleadings

but does not make provision for testing the legal sufficiency of affidavits by a motion to strike.");

*see also York v. Ferris State University*, 36 F. Supp. 2d 976, 980 (W.D. Mich. 1998) ("Rule

12(f), by its express terms, applies only to "pleadings."  An affidavit is not a "pleading." ... Thus,

9

Rule 12(f) provides no basis for the motion.").

Defendants' arguments arising under Rule 56(e) are equally without merit.  In view of the updated affidavit, the Court is satisfied that the affidavit sufficiently complies with Rule 56(e). Specifically, Rule 56(e) provides that a "supporting affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).  When opposing a motion for summary judgment, a supporting affidavit "may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In support of the motion to strike, Defendants cite specific paragraphs of the affidavit which they argue are pure hearsay or mere opinion evidence.  In particular, Defendants cite paragraphs 3, 10, 11, 12, 13, 19, 21, 24, 25, 27, 28, 30, 31, 33, and 34.  The paragraphs that concern statements made by GMACM representatives are not hearsay and therefore are not subject to being stricken.  Federal Rule of Evidence 801(d)(2) provides that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not considered hearsay if the "statement is offered against the party."  Fed. R. Evid. 801(d)(2).  As such, Defendants' argument that paragraphs 12, 19, 28 and 31 are inadmissible hearsay is without merit.

Similarly, Defendants' contention that Plaintiff does not have sufficient personal knowledge of the facts is also unavailing.  The updated affidavit expressly incorporates that the facts contained therein are based upon "personal knowledge," although not so expressly stated in the prior affidavit the disputed paragraphs suggests as much.  In any event, the Court is satisfied

10

that paragraphs 3, 10, 11, 13, 21, 24, 25, 27, 30, 33, 34 and 35 are reasonably within the personal knowledge of the affiant.  Accordingly, Defendants' motion to strike is DENIED.

**B.   Summary Judgment**

1.   <u>RESPA Claim</u>

The substance of Plaintiff's initial count is governed by RESPA.  "Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home purchasing process." *Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002).  The statute expressly provides:

> The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a).  Of importance to the case at bar, "RESPA requires that upon the receipt of a qualified written request, the servicer of a federally related mortgage loan must acknowledge receipt of the correspondence within twenty days, excluding weekends and holidays, and within sixty working days, must make appropriate corrections or investigate and provide the borrower with a written notification explaining why the servicer believes the account is correct."  *Harris v. American General Finance, Inc.*, 259 Fed. Appx. 107, 109 (10th Cir. 2007) (citing 12 U.S.C. § 2605(e)(1)(A) & (2); 24 C.F.R. § 3500.21(e)).  Another one of the abusive practices that Congress sought to eliminate through the enactment of RESPA was the payment of referral fees, kickbacks, and other unearned fees.  *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979, 981 (11th Cir. 2003).

In Count I of her Complaint, Plaintiff alleges that Defendant GMACM willfully violated several provisions of RESPA.  First, Plaintiff alleges that Defendant violated § 2605(e)(2)(A)

11

"[b]y failing to make appropriate corrections in the Plaintiff's account and transmit written

notification of such correction to the Plaintiff." [Compl. ¶44].  Second, Plaintiff claims that

Defendant violated § 2605(e)(2)(B) "[b]y failing to provide the Plaintiff with a written

explanation or clarification that includes a statement of the reasons that GMAC Mortgage

Corporation believed the Plaintiff's account to be correct and the name and telephone number of

an individual employed by the Defendant who could provide assistance to the Plaintiff." [*Id.*].

Third, Plaintiff asserts that Defendant violated 12 U.S.C. § 2605(e)(2)(C) "[b]y failing to provide

Plaintiff with a written explanation or clarification that included information requested by the

Plaintiff or an explanation of why the information requested was unavailable or could not have

been obtained by GMAC Mortgage Corporation and the name and telephone number of an

individual who could provide assistance to the Plaintiff." [*Id.*].  Fourth, Plaintiff submits, upon

information and belief, that Defendant violated 12 U.S.C. § 2605(e)(3) "[b]y providing

information... information regarding any overdue payment owed by the Plaintiff and relating to

the period described in the qualified written request to a consumer reporting agency during the 60

day period which began on the date of GMAC Mortgage Corporation's receipt of the qualified

written request." [*Id.*].  Finally, Plaintiff claims that Defendant "willfully violated [RESPA] by

taking unearned fees from the Plaintiff." [Compl. ¶43].

     Defendants' arguments in favor of summary judgment are two-fold: (1) Plaintiff has

provided insufficient factual allegations to stave off summary judgment; and (2) Defendants'

response to the qualified written request adequately comported with the requirements of RESPA.

The Court finds merit in some of these contentions and will grant summary judgment in part.

     The Court first dispenses with Defendants' challenge to the sufficiency of the RESPA

claim.  In particular, Defendants – relying on Fed. R. Civ. P. 12(c) – assert that "nothing is alleged in the Complaint to allow the court to find that Wienert can prove facts in support of her claim that GMACM committed a violation of the list of RESPA prohibitions recited in the Complaint."  When analyzing the sufficiency of a complaint, the Court applies the principle that a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A plaintiff is not required to provide "heightened fact pleading of specifics," but must allege facts sufficient to "raise a right to relief above the speculative level."  *Id.* at 555.  Therefore, in the context of alleged RESPA violations, a plaintiff need only (1) allege a breach of a RESPA duty, and (2) further allege that the breach resulted in actual damages, to survive a motion for judgment on the pleadings.  *See e.g. Hutchinson v. Delaware Savings Bank FSB*, 410 F. Supp.2d 374, 383 (D.N. J. 2006).  Plaintiff has satisfied this burden.  Her complaint alleges multiple violations of RESPA, as cited above, and further alleges that as a result of said violations that she has suffered damages. [Compl. ¶38-45].  Accordingly, Defendants are not entitled to judgment on the pleadings.

Next, Defendants contend, pursuant to Fed. R. Civ. P. 56(c), that there is no genuine issue of material fact concerning its response to the qualified written requests under RESPA. Therefore, this Court is required to determine, drawing all reasonable inferences in favor of Plaintiff, whether a question of material fact exists concerning the sufficiency of Defendant GMACM' s response to the qualified written requests.  The Court finds that Defendants are entitled to summary judgment as to any claims arising from the sufficiency of the response to the qualified written requests.

13

The gravamen of Plaintiff's RESPA claim rests upon the sufficiency of Defendant GMACM's response to the August 25, 2008 qualified written request.  As noted above, Plaintiff submits that the subject response violated RESPA by: (1) failing to make appropriate corrections to the account; (2) failing to provide the name and telephone number of an individual employed by Defendant who could provide assistance; (3) failing to provide a written explanation; and (4) failing to provide the information requested.  In addition to challenging the sufficiency of the response to the August 25, 2008 qualified written response, Plaintiff also claims that Defendant GMACM violated § 2605(e)(3) by continuing to report information of overdue payments to national credit bureaus despite its receipt of the qualified written response.  Having reviewed both the qualified written request and its attendant response, the Court holds that Defendants are partially entitled to summary judgment.  Before addressing these contentions, however, it is appropriate to set forth the statutory landscape giving rise to the instant allegations.

Section 2605(e), which imposes certain duties on servicers of loans, governs the type of response a servicer, as defined in § 2605(i)(2), must send after receiving a qualified written request, as defined in §2605(e)(1)(B).  After receiving a qualified written request, a servicer must respond in one of three ways, assuming the request asks for information relating to the servicing of federally related mortgage loans.  *Johnstone*, 173 F. Supp.2d at 812-813.  First, § 2605(e)(2)(A) allows the servicer to transmit a written notification to the borrower indicating that appropriate corrections to the borrower's account have been made.  12 U.S.C. § 2605(e)(2)(A).  Second, § 2605(e)(2)(B) permits the servicer to send a written explanation that includes information requested by the borrower or the reasons why the requested information is unavailable.  12 U.S.C. § 2605(e)(2)(B).  Third, § 2605(e)(2)(C) allows the servicer to send the

borrower a written explanation that includes the information requested by the borrower or the reasons why the requested information is unavailable.  § 2605(e)(2)(c).  However the servicer chooses to respond, RESPA requires the servicer's response to be made within sixty (60) days of receiving the qualified written request.  § 2605(e)(2).

The Court has reviewed both the August 25, 2008 qualified written request and the September 8, 2008 response thereto referenced by the parties with regard to the claim against Defendants under § 2605(e) of RESPA.  To begin, the August 25, 2008 letter clearly constitutes a qualified written request because it: (1) includes Plaintiff's name and account information; and (2) indicates that the account is in error and provides more than sufficient detail to allow the Defendants to apprehend Plaintiff's reason for believing there is an error.  § 2605(e)(1)(B).  In fact, Plaintiff makes eight requests concerning her account, including inquiries regarding: payment history, claimed arrears or delinquencies, calculations, loan agreement, assignments, payment dates, finance charges, annual escrow statements.

Despite Plaintiff's arguments to the contrary, Defendant GMACM's September 8, 2008 response to the qualified written request appears to satisfy its obligation under RESPA.  First, it was sent within the sixty (60) day period following Defendant GMACM's receipt of Plaintiff's qualified written request.  Furthermore, the content of Defendant GMACM's response comports with its statutory obligation under § 2605(e)(2)(C) because it "provide[s] the borrower with a written explanation" in response to the specific "information requested by the borrower."  In fact, Defendant GMACM's September 8, 2008 response provides corresponding responses to the eight inquires made by Plaintiff.  Finally, Defendant GMACM concluded by providing the contact information of its foreclosure attorney, Orlans Associates, adequately complying with §

15

2605(e)(2)(B).  Because there is no genuine issue of material fact as to whether Defendant

GMACM complied with its obligations to Plaintiff when it responded to her qualified written

request, Defendant is entitled to summary judgment as to the claims arising under §2605(e)(2) of

RESPA.

       This adequate response refutes Plaintiff's claim that Defendant GMACM failed to make

the appropriate corrections to her account.  In so arguing, Plaintiff assumes that Defendant

GMACM's only method of compliance with its duties must arise from  §2605(e)(2)(A).

However, as demonstrated above, servicers may respond in any one of the three options afforded

under  §2605(e)(2). In this instance, Defendant GMACM chose to comply with §2605(e)(2)(C).

This same reasoning is equally fatal to Plaintiff's claim alleging a lack of a written explanation or

clarification arising under 12 U.S.C. § 2605(e)(2)(B).  Again, the statute allows servicers to

choose a method of response, there is no duty to comply with all three.  *See, e.g. Elkins v. Ocwen*

*Federal Savings Bank*, No. 06C0823, 2006 WL 3147716, *2 (N.D. Ill. Oct. 27, 2006).   A

superficial examination of Defendant GMACM's response also eliminates Plaintiff's claim that it

failed to provide the name of an individual employed by the Defendant who could provide

assistance to the Plaintiff.  As referenced above, Defendant GMACM did include the contact

information of Orlans Associates, P.C., the firm responsible for commencing its foreclosure

proceedings.  While the attached e-mail correspondences with Orlans Associates, P.C. did not

evidence the hallmark of beneficial assistance, the inclusion of their contact information within

the September 8, 2008 response sufficiently complied with 12 U.S.C. § 2605(e)(2)(C)(ii)'s

mandate to include "the name and telephone number of an individual employed by, or the officer

or department of, the servicer who can provide assistance to the borrower."  Accordingly,

Defendants' motion for summary judgment is granted in part.  To be clear: to the extent that Plaintiff's RESPA claims rest upon an insufficient response to her qualified written request they are dismissed.

Yet, there are two RESPA claims not subject to summary dismissal.  Neither Defendants nor Plaintiff make any arguments regarding Plaintiff's allegation that Defendant GMACM violated RESPA by taking unearned fees from Plaintiff arising under §2607(b), and therefore that claim survives summary judgment.  The parties do square-off, however, on Plaintiff's claim that Defendants violated RESPA by reporting overdue payments to a consumer reporting agency after being in receipt of the qualified written request in contravention of § 2605(e)(3).  Because there is a genuine issue of material fact as to whether Defendants reported an overdue payment within sixty (60) days of receiving the August 25, 2008 qualified written request, Defendants are not entitled to summary judgment on this claim.

Apart from regulating responses, RESPA also places restrictions on a servicer's ability to make credit reports.  Pursuant to § 2605(e)(3) a servicer cannot report a borrower to a credit agency on a payment issue that the borrower raised in a qualified written request during the sixty (60) day period beginning on the date of the servicer's receipt of the borrower's qualified written request.  Defendant claims that it did not report any disputed payments during this period.  On the other hand, Plaintiff avers in her sworn affidavit that Defendant GMACM "continued to report the late payments on [her] credit report," and attached redacted copies of her credit report in support of this assertion. [Updated Affidavit of Alexenda Wienert, Pl.'s Resp. to Def.'s Mot. to Strike, Ex. DD].  Accordingly, Defendants' motion for summary judgment is denied as to that claim.

17

2.      Breach of Contract

In opposition to Plaintiff's breach of contract claim, Defendants also argue that Plaintiff is unable to demonstrate a material question of fact regarding her assertion that she is several months ahead in her mortgage payments.  However, there is sufficient evidence in dispute to submit this question to the trier of fact for resolution.

The breach of contract claim revolves around the parties' disputed interpretations of the repayment agreements, and the Defendants' application of Plaintiff's mortgage payments.  It is Defendants' contention that the default and subsequent initiation of foreclosure proceedings was caused by Plaintiff's failure to pay the escrow shortage amounts and her failure to pay increased mortgage amounts (above the repayment scheduled amounts) beginning in August 1, 2006.  However, it is Plaintiff's contention that she fully complied with the terms of the agreements, and that Defendant GMACM has repeatedly breached its contract with her by, among other things, wrongfully instigating a breach through unwarranted fees, repeatedly misstating the amount due under the loan, disingenuously requesting specific forms of action and then claiming that the requested action caused the default, and wrongfully attempting to foreclose on her home.  Based on the dispute among the parties, the Court is unable to conclude as a matter of law that Defendant is entitled to summary judgment at this juncture.

3.      Damages

Finally, Defendants also challenge Plaintiff's entitlement, if any, to damages.  Relying on 12 U.S.C. § 2605(f), Defendants argue that any damages that Plaintiff asserts, beyond actual damages, are precluded by the statute.  In response, Plaintiff argues that in addition to her actual damages she may also be entitled to damages arising under her claim of emotional distress.  The

Court finds that Plaintiff's damages are limited to actual damages as provided in § 2605(f)(1)(A), but that this definition embraces emotional distress damages.

Section 2605(f) of RESPA governs damages arising from violations of RESPA's provisions, and in pertinent part provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals
> In the case of any action by an individual, an amount equal to the sum of –
>
>> (A) any actual damages to the borrower as a result of the failure; and
>>
>> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

The Court concurs with Defendants' assertion that Plaintiff is not entitled to any damages arising under § 2605(f)(1)(B), because the Plaintiff has not alleged "a pattern or practice of noncompliance with the requirements of this section." Moreover, by failing to respond to this line of argumentation, Plaintiff has effectively abandoned it. *Anglers of the Au Sable v. U.S. Forest Service*, 565 F. Supp.2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").

Plaintiff does respond, however, by arguing that in addition to her actual damages of $9,874.39, she is entitled to emotional damages under § 2605(f)(1)(A). Defendants counter by arguing that Plaintiff has not provided sufficient discovery regarding emotional damages because "Defendants learned for the first time through their receipt of the Brief in Opposition that Plaintiff is seeking emotional distress damages." [Def.'s Reply to Pl.'s Resp. to Mot. for Summ.

19

J., p. 4].  Further, Defendants argue for a narrower interpretation that would only allow emotional damages for violations of §2605(e)(3) (reporting negative payment information during the 60-day period after receiving qualified written request.). The Court finds Defendants' argument unpersuasive.

Although the question presented by this argument – the scope, if any, of emotional damages permitted under § 2605(f) –  may be of first impression within the district courts of this circuit, the issue has been sufficiently addressed by the reasoning of several other federal district courts.  *See e.g., Johnstone v. Bank of America*, 173 F. Supp.2d 809, 814-816(N.D. Ill. 2001). The Court notes that the argument regarding the scope of emotional damages permitted by § 2605(f) is merely tangential to another issue that has yet to be addressed by any federal court of appeal: whether § 2605(f) supports a claim for emotional damages.  Although the issue is not conclusively settled, this Court concurs with the reasoning of the majority of other federal courts confronted with the question in finding that such emotional damages are a part and parcel of the "actual damages" permitted by the statute.  *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp.2d 1156, 1166-67 (M.D. Al 1999) ("In light of Congressional intent as demonstrated in both RESPA's statutory language and legislative history, as well as other courts' construction of damages provisions in other remedial consumer protection statutes, the court finds that the term "actual damages" as used in §2605(f) of RESPA encompasses mental anguish damages."); *Johnstone*, 173 F. Supp.2d at 816 ("The court concludes, therefore, that RESPA allows actual damages for emotional distress."); *Ploog v. Homeside Lending, Inc.*, 209 F. Supp.2d 863, 870 (N.D. Ill. 2002) ("the Court holds that RESPA is a consumer protection statute and RESPA's actual damages provision includes recovery for emotional distress."); *Mclean v. GMAC Mortgage*

20

*Corporation*, No. 06-22795-CIV, 2008 WL 1956285, *11 (S.D. Fla. May 2, 2008) ("The Court is

persuaded by the rationale in *Rawlings* and finds that non-pecuniary damages are recoverable as

"actual damages" under section 2605."); *Carter v. Countrywide Home Loans*, 07-CV651, 2009

WL 1010851, *3 (E.D. Va. April 14, 2009) ("Only two courts that have analyzed § 2605(f) have

held that its actual damages provision does not encompass emotional distress.");  *contra Katz v.*

*Dime Savings Bank, FSB*, 992 F. Supp. 250, 255-56 (W.D.N.Y. 1997); *In re Tomasevic*, 273 B.R.

682*,* 687 (M.D. Fla 2002).  A review of this case law also dispenses with Defendants' narrow

construction of § 2605(f), as several other courts permitted emotional damages for violations of

RESPA outside of § 2605(e)(3).  Further, the statute itself makes no distinction between

violations, and neither will this Court.  § 2605(f) ("Whoever fails to comply with *any provision*

of this section shall be liable...") (emphasis added).  Accordingly, Defendants' motion for

summary judgment is granted to the extent that it challenges Plaintiff's reliance on §

2605(f)(1)(B), however it is denied in all other respects relating to damages.

Although the Court concludes that recovery for emotional distress damages is available

under § 2605(f) of RESPA, the Court finds that an issue of material fact exists as to whether

Plaintiff has suffered any damages arising from emotional distress.  Consequently, summary

judgment on this issue is denied.  However, Defendants will be permitted to conduct further

discovery as to the extent of the alleged emotional harm as Plaintiff failed to properly respond to

interrogatories regarding the nature of "actual damages" under § 2605(f).

**V.    CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** that Plaintiff's Motion to Compel Answers to Interrogatories **[Docket**

No. 15, filed June 12, 2009] is **DENIED WITHOUT PREJUDICE**.

      **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss and for Summary Judgment **[Docket No. 16, filed June 12, 2009]** is **GRANTED IN PART**.  Plaintiff's RESPA claims resting on the sufficiency of the response to the August 25, 2008 qualified written request are **DISMISSED**.  Plaintiff's claim that Defendant GMACM violated RESPA by taking unearned fees from Plaintiff arising under §2607(b) will proceed to trial.  Additionally, Plaintiff's claim that Defendant GMACM violated RESPA by reporting overdue payments to a consumer reporting agency after being in receipt of the qualified written request in contravention of § 2605(e)(3) also survives summary judgment.  Finally, the Court finds a material question of fact as to Plaintiff's breach of contract claim.

      **IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Affidavit **[Docket No. 20, filed July 10, 2009]** is **DENIED**.

                       S/Denise Page Hood            
                       Denise Page Hood
                       United States District Judge

Dated:  September 29, 2009

      I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

                       S/William F. Lewis           
                       Case Manager